UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

——————————————————————x
:
McNEIL NUTRITIONALS, LLC :
:
          Plaintiff, :
:
           :   Civil Action No. 06-CV-
       v. :
:
HEARTLAND SWEETENERS LLC and :
HEARTLAND PACKAGING CORP., :
:
          Defendants. :
——————————————————————x

## **COMPLAINT**

      Plaintiff McNeil Nutritionals, LLC, for its Complaint against Defendants Heartland Sweeteners, LLC and Heartland Packaging Corp. (together "Heartland"), respectfully alleges as follows:

### **INTRODUCTION**

      1.     This is an action for preliminary and permanent injunctive relief, a product recall, damages, and attorneys' fees for Defendants' false designation of origin of goods in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125, for dilution of trade dress and trademark under Pennsylvania state law, 54 PA. CONS. STAT. ANN. § 1124, for unfair competition under Pennsylvania common law and for misappropriation of an advertising idea under Pennsylvania common law.

      2.     Defendants have recently begun to manufacture, distribute and sell a variety of no-calorie sweeteners throughout the United States in packaging virtually identical to the packaging of Plaintiff's best-selling brand of no-calorie sweetener, Splenda®. As a result of

these similarities, consumers are likely to confuse the products. As such, Defendants have violated Plaintiff's rights under the Lanham Act and Pennsylvania statutory and common law, and Plaintiff is entitled to injunctive relief, a product recall and damages.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a) and (b) and § 1367.

4. Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) and (c).

**THE PARTIES**

5. Plaintiff McNeil Nutritionals, LLC ("McNeil") is a Delaware limited liability company with its principal place of business in Fort Washington, Pennsylvania. McNeil's products include the no-calorie sweetener sucralose, which it markets under the name Splenda.

6. Upon information and belief, defendant Heartland Sweeteners LLC is a wholly owned subsidiary of Heartland Packaging Corporation. Both companies are incorporated and organized under the laws of the State of Indiana, with their principal place of business at 14300 Clay Terrace Blvd., Suite 249, Carmel, IN 46032. Upon information and belief, Defendants produce store-brand, or "private label," sucralose sweeteners in United States commerce and sell them to a number of food retailers, including Wal-Mart, Stop & Shop, Giant, Tops, Food Lion and Safeway. These store-brand sweeteners are positioned to compete with Splenda.

## BACKGROUND

7.      Each year, American consumers spend more than $500 million on artificial sweeteners – products that take the place of sugar, but have no calories.

8.      Until 2000, the no-calorie sweetener market was dominated by products made with saccharin (e.g., Sweet'N Low®, marketed by Cumberland Packaging Corp.) or aspartame (e.g., Equal®, marketed by Merisant Co.).  In 2000, McNeil introduced Splenda, the first sucralose-based sweetener.  Since its introduction, sales of Splenda have skyrocketed and Splenda has captured approximately 60% of the low-calorie sweetener market in the United States.

## SPLENDA

9.      Sucralose, the sweetening ingredient in Splenda, is derived from sugar using a patented process that preserves sugar's sweet taste, but alters its molecular structure so it passes through the body without being metabolized for energy (calories).  Between 1990 and 1993, sucralose was approved for use by a variety of organizations including the Health and Protection Branch of Health and Welfare Canada, Australia's National Food Authority and the Joint Food and Agriculture Organization/World Health Organization Expert Committee on Food Additives.  The worldwide launch of Splenda began in 1991 with its introduction in Canada.

10.     In April 1998, the U.S. Food and Drug Administration ("FDA") approved the use of sucralose in 15 food and beverage categories, the broadest initial approval ever given to a no-calorie sweetener.  In August 1999, the FDA approved sucralose for use as a general-purpose sweetener, expanding its use to all categories of foods and beverages.  In 1999, McNeil began marketing its Splenda brand sucralose sweetener to U.S. consumers via the Internet and, in

September 2000, Splenda was launched in retail stores in the United States. Splenda currently is sold in more than 30 different countries around the world.

11. Splenda is sold both in the retail and food service markets. All major retail chains and grocery stores, such as Wal-Mart, Stop & Shop, Giant and Safeway carry Splenda. Splenda is also sold in bulk through club stores such as Costco and Sam's Club. In addition, Splenda is sold in food service – as demonstrated by its ubiquitous appearance at restaurants and the Starbuck's chain nationwide.

12. Splenda has been an astronomical success. Sales of Splenda have grown more than ten fold from about $32 million in 2001 to projected sales of $410 million in 2006. Within a year of its introduction, Splenda captured 14% of the total U.S. market for low-calorie sweeteners (based on dollar volume). That share has increased over the last five years, and Splenda is now far and away the market leader with approximately a 60% dollar share of the category, compared to approximately 15% for Equal and 14% for Sweet'N Low.

## THE SPLENDA TRADE DRESS

13. Prior to the U.S. launch of Splenda, McNeil devoted significant time and expense to developing packaging for Splenda that would be distinctive, aesthetically pleasing and memorable to consumers. Further, McNeil purposefully crafted its Splenda trade dress to distinguish itself from the market leaders of the time – Sweet'N Low (packaged in pink boxes and packets) and Equal (packaged in blue boxes and packets).

14. McNeil adopted packaging with a yellow, blue and white color scheme. The background color is a subtle pastel yellow color that was different from and softer than any other yellow packaging then on the market. Blue was chosen for the package lettering and a

unique color fade motif is employed for the blue lettering of the product name. Completing the color scheme is a white cloud that envelopes the blue product name. The Splenda packaging is depicted below:



*Figure 1.    Packaging for Splenda 100 Count Box of Individual Packets*

15.     The Splenda color scheme is repeated on its individual packets – each packet, whether sold in stores or distributed via food service, has a pastel yellow background with blue lettering. The packets are also depicted on the front panel of each box.



*Figure 2. Individual Splenda Packet*

16.     As shown below, the packaging for Splenda in granular form (available in one and two pound boxes as well as a five pound Baker's bag) has the same yellow color, design elements and overall look as the box for Splenda packets.



*Figure 3.  Packaging for 100-count Splenda packets and 1 pound box of granular product*

17. The color scheme, pictorial elements, labeling and layout of the Splenda package all contribute to an overall appearance that is distinctive in the artificial sweetener category.

## McNEIL'S ADVERTISING SLOGAN

18. Since the retail launch of Splenda in September 2000, all television commercials and all print advertisements for Splenda No-Calorie Sweetener have referenced the sugar origins of Splenda and have included either the tagline that Splenda is "made from sugar so it tastes like sugar" or the similar claim that "Splenda tastes like sugar because it's made from sugar."

19. To highlight this slogan on its packaging, McNeil integrated a unique design feature. The bottom left hand corner of every box is dominated by a circular seal that highlights the slogan "Made From Sugar, Tastes Like Sugar." Since the retail launch in September 2000, all exterior product packaging for all Splenda No-Calorie Sweetener products sold in the United States have included this logo both on the front and top panels:



*Figure 4.    Photo of the Splenda Advertising Slogan Logo*

20. The slogan also appears on the back of the Splenda box, which states that "SPLENDA® No Calorie Sweetener is made from sugar so it tastes like sugar."

21. In addition, all Splenda no-calorie sweetener individual serving packets sold in the United States, whether at retail or through food service, have borne the Splenda tagline that Splenda is "MADE FROM SUGAR SO IT TASTES LIKE SUGAR."  See Figure 2. Consumers have come to know and associate this slogan with Splenda.

## THE SPLENDA SLOGAN AND PACKAGING ARE PROTECTIBLE

22. Over time, McNeil has introduced various Splenda products to the market and has, at times, "freshened" its packaging with minor aesthetic adjustments. All Splenda products, however, have maintained the same distinctive look and feel and have included the same advertising slogans that consumers have come to associate with the Splenda brand.

23. McNeil has invested large sums of money to publicize the distinctive Splenda package and its advertising slogan, so consumers will readily recognize Splenda on store shelves. The Splenda package is prominently featured in print and television advertising, on the internet, in product promotional campaigns, press releases, and other public relations materials. Since its launch in September 2000 through the end of 2006, McNeil has spent approximately $230 million advertising and promoting the Splenda brand to consumers.

24. As a result of Plaintiff's extensive advertising, promotional efforts, and the distinctiveness of the Splenda packaging, McNeil's trade dress and advertising slogans have acquired invaluable goodwill, recognition and secondary meaning among consumers.

25. McNeil has also, when necessary, taken legal steps to protect its investment in the Splenda brand. For example, in <u>McNeil PPC, Inc. v. Merisant Co.</u>, 2004 U.S. Dist. LEXIS 27733 (D.P.R. July 29, 2004), McNeil obtained a preliminary injunction and product recall to prevent a party that, like Heartland, was attempting to co-opt the goodwill of the Splenda brand by mimicking the distinctive packaging of Splenda.

## **HEARTLAND'S INFRINGING PACKAGES**

26. On information and belief, in or about July 2006, a number of private label sweeteners packaged by Heartland were introduced to the market. Photographs of the front panels of the packages of these products are attached hereto as Exhibits A-E. Heartland manufactures these packages, and sells these sweeteners, which contain sucralose, to a number of major grocery store chains, including Stop & Shop, Giant, Tops, Food Lion and Safeway. All of Heartland's store-brand sucralose products use yellow packaging with blue lettering that is confusingly similar to the well-known trade dress of Splenda.

27. Heartland's new sweetener boxes feature similar combinations of the yellow, white and blue colors found on the Splenda box and use essentially the same size, shape and overall design as the Splenda package, as well as many of the same graphical elements. Heartland's store-brand sweeteners include combinations of the following Splenda elements:

- yellow-colored background
- blue lettering
- italicized font for the product name

- product name beginning with an "S" in larger script
- unique blue color-fading motif on product name
- white background highlighting product name
- circular seal
- slogan: "Made From Sugar [so it] Tastes Like Sugar"
- identical package width
- virtually identical package height
- similar photos (e.g., white coffee cup, slice of pie, bowl of cereal)
- similar design layout
- similar yellow packets with blue lettering

28. While isolated elements appearing on Splenda packaging also appear on other packages in the category (such as a coffee cup or bowl of cereal), Heartland has copied numerous elements, and has placed them on yellow packaging with blue lettering such that the store-brand packages have the same look and feel of the Splenda packaging.

29. For example, the five-pound bag of the Stop & Shop "Sweetener" product sold by Heartland (pictured below) mimics nearly every element of the Splenda package. While Heartland has modified slightly the orientation of some of the package elements, the overall impression of the Stop & Shop package evidences a clear intention to copy the Splenda package.




*Figure 5.     Comparison of Splenda and Stop & Shop 5-pound bag of granular product*

30. Similarly, the 100-count box of Giant "Sweetener" packets copies the distinctive Splenda trade dress:

 

*Figure 6.    Comparison of Splenda and Giant 100-count packet packaging.*

31. The Giant, Tops and Stop & Shop "Sweetener" packets, and the Safeway "Sucralose" packets, also mimic the Splenda design elements. They are the same shade of yellow, with blue italicized lettering with an enlarged first letter "S" of the product name:



*Figure 7.    Photo of Splenda packet*



*Figure 8.    Photo of Safeway packet*



*Figure 9.  Photo of Giant, Tops and Stop & Shop Packet*

32. Although the Tops, Giant, Safeway and Stop & Shop packets are not sold directly to food service distributors, such store brand products are commonly purchased by small restaurants, offices and other establishments, where they are made available to consumers for use in coffee and other beverages.  Thus, it is likely that consumers will be exposed to these packets and will be confused as to whether the product is Splenda.

33. Even though Heartland had an infinite number of color schemes, design layouts, and images it could have featured on its products, it has chosen to feature elements very similar to those found on the Splenda package.

## HEARTLAND'S COPYING OF THE SPLENDA SLOGAN

34. At least three of the products manufactured by Heartland (Giant, Tops and Stop & Shop) incorporate a version of the Splenda slogan, albeit by displaying the slogan in a banner or flag rather than in a circular seal.



*Figure 10.  Photo of Giant, Tops and Stop & Shop Slogan*

## **LIKELIHOOD OF CONFUSION**

35. Heartland's copying of the well-known Splenda trade dress and slogan is likely to cause consumer confusion, which will be exacerbated by the fact that Heartland's store-brand products and Splenda are sucralose sweeteners sold in the same market, in the same stores, and displayed near or next to each other. As shown in the photographs depicted in Exhibit F, in some stores, Heartland's store-brand product is being placed on the shelf immediately next to Splenda. Given the remarkable similarity in their appearance, it is inevitable that consumers will confuse Defendants' private label brands with McNeil's Splenda product.

36. Heartland can point to no functional necessity for its deliberate and willful copying of the Splenda trade dress. Rather, the only purpose served by Heartland's copying of the Splenda package is to trade on the goodwill surrounding McNeil's brand.

37. Heartland's mimicry of the color, layout, artwork, labeling and other design elements of the Splenda package is likely to cause confusion among consumers as to the source or sponsorship of Heartland's goods. This confusion will take the form of (i) actual confusion as to whether Heartland's product is Splenda; (ii) confusion as to the source, origin or sponsorship of Heartland's products; (iii) subliminal confusion in that the close similarity of Heartland's packaging to McNeil's packaging is what draws consumers' attention to Heartland's products in the first place and, accordingly, leads to the ultimate sale of Heartland's product to consumers (i.e., initial interest confusion); and/or (iv) confusion stemming from the close similarity of Heartland's packaging to McNeil's packaging for individual packets of sweetener because when end-consumers reach for yellow sweetener packets with blue lettering they are reaching for what they believe to be Splenda (i.e., post-sale confusion).

## INJURY TO PLAINTIFF AND THE PUBLIC

38. Heartland's trade dress infringement and misleading positioning of store-brand sweeteners as equivalent to Splenda are causing several distinct forms of injury to McNeil.

39. First, McNeil will lose sales to the extent that Heartland causes consumers to purchase store-brands under the mistaken belief that they are buying Splenda. In addition, because relatively little consumer advertising or promotion is undertaken for store-brand sweeteners, Heartland's products unfairly gain recognition and sales at McNeil's expense by borrowing from the reputation, goodwill and recognition factor embodied and conveyed by McNeil's trade dress.

40. A further form of injury to McNeil is loss of control over its brand's reputation. Heartland's unauthorized copying of McNeil's trade dress causes McNeil's brand to be associated with a product over which it has no control. This involuntary association could injure McNeil if consumers are dissatisfied with Heartland's products for any reason (e.g., ingredients, taste, appearance, packaging, etc.) and consequently have a less favorable opinion of Splenda.

41. McNeil has protested Heartland's infringement of McNeil's trade dress rights, but Heartland has refused to remedy its unlawful conduct. As a result, McNeil is suffering and will continue to suffer irreparable injury for which it has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF
### (Lanham Act: False Designation of Origin)

42. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 with the same force and effect as if set forth herein.

43. Defendants' manufacture, distribution and sale of store-brand sweeteners in the packages shown in Exhibits A-E constitutes false designation of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125.

## SECOND CLAIM FOR RELIEF
### (Pennsylvania Dilution Statute: 54 PA. CONS. STAT. ANN. § 1124)

44. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 with the same force and effect as if set forth herein.

45. Defendants' manufacture, distribution and sale of store-brand sweeteners in the packages shown in Exhibits A-E dilutes the distinctive quality of the Splenda trade dress in violation of the Pennsylvania Anti-Dilution Act, 54 PA. CONS. STAT. ANN. § 1124.

## THIRD CLAIM FOR RELIEF
### (Pennsylvania Common Law: Unfair Competition)

46. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 with the same force and effect as if set forth herein.

47. Defendants' manufacture, distribution and sale of store-brand sweeteners in the packages shown in Exhibits A-E constitutes unfair competition in violation of Pennsylvania common law.

## FOURTH CLAIM FOR RELIEF
### (Lanham Act: False Designation of Origin)

48. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 with the same force and effect as if set forth herein.

49. Defendants' use of the advertising slogan "Tastes Like Sugar because its Made from Sugar", as shown in Exhibits A-E, constitutes false designation of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125.

## FIFTH CLAIM FOR RELIEF
### (Pennsylvania Dilution Statute: 54 PA. CONS. STAT. ANN. § 1124)

50. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 with the same force and effect as if set forth herein.

51. Defendants' manufacture, distribution and sale of store-brand sweeteners with the advertising slogan "Tastes Like Sugar because its Made from Sugar" dilutes the distinctive quality of McNeil's advertising slogans "Made From Sugar [so it] Tastes Like Sugar" and "Splenda tastes like sugar because it's made from sugar" in violation of the Pennsylvania Anti-Dilution Act, 54 PA. CONS. STAT. ANN. § 1124.

## SIXTH CLAIM FOR RELIEF
### (Pennsylvania Common Law: Unfair Competition)

52. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 with the same force and effect as if set forth herein.

53. Defendants' use of the advertising slogan "Tastes Like Sugar because its Made from Sugar" constitutes unfair competition under Pennsylvania common law.

## SEVENTH CLAIM FOR RELIEF
### (Pennsylvania Common Law: Misappropriation of an Advertising Idea)

54. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 with the same force and effect as if set forth herein.

55. Defendants' use of the advertising slogan "Tastes Like Sugar because its Made from Sugar" constitutes misappropriation of an advertising idea under Pennsylvania common law.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(1) For preliminary and permanent injunctive relief enjoining Heartland, its employees, officers or agents, and all others acting in concert with or for them (a) from continued sale or distribution of the store-brand packages shown in Exhibits A-E, (b) from using or distributing any advertising or sales materials depicting such packaging, and (c) from using or distributing any packaging, packets, advertising or sales materials that use the Splenda advertising slogan or tagline;

(2) For preliminary and permanent injunctive relief enjoining Heartland, its employees, officers or agents, and all others acting in concert with or for them from manufacturing, distributing, importing, marketing or selling a no-calorie sweetener with packaging that is confusingly similar in appearance to any packaging utilized by Plaintiff for its Splenda product, including without limitation the store-brand packages depicted in Exhibits A-E hereto;

(3) For preliminary and permanent injunctive relief directing Heartland to recall from distribution and destroy all packaging, and all sales material depicting packaging for the store-brand products shown in Exhibits A-E;

(4) For a declaration pursuant to 15 U.S.C. § 1117 that Heartland's misconduct is deliberate and willful, making this an "exceptional case";

(5) For compensatory and treble damages;

(6) For an accounting of all Heartland's profits from the sale of the infringing products;

(7) For costs and disbursements of this action, including reasonable attorneys' fees; and

(8) For such other, further and different relief as the Court deems just and proper.

Dated: December 5, 2006
      Philadelphia, PA

DRINKER BIDDLE & REATH LLP

By: _____
Alfred W. Putnam, Jr.
David J. Kessler
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996
Tel: (215) 988-2907

Of Counsel:

PATTERSON BELKNAP WEBB & TYLER LLP
    Steven A. Zalesin
    Karla G. Sanchez
    1133 Avenue of the Americas
    New York, NY 10036-6710
    Tel: (212) 336-2000

JOHNSON & JOHNSON
    Donna Malin, Esq.
    Eric Schwartz, Esq.